2539, Belsy Coto-Albarenga v. Merrick B. Garland. Mr. Wickmer. Thank you, Your Honor. Please proceed. Thank you. May it please the court. My name is Timothy Wickmer. I represent the petitioner, Belsy Coto-Albarenga. We pray the court respectfully to vacate the negative credibility finding of the agency and to remand the decision back to the agency for proceedings consistent with asylum and withholding and convention against torture relief on the merits. The board erred in upholding the IJ's negative credibility finding because it was not supported by substantial evidence in the record as a whole. So under Singh v. Gonzalez, the board's finding must be convincing. The finding must be convincing enough that a reasonable adjudicator would not be compelled to reach the contrary conclusion. And in their Tabeasa v. Holder, the court stated that it must focus on whether the BIA's order is supported by substantial evidence. So this is a post-Real ID Act claim, but the analysis of whether the negative credibility was properly found involves aspects of pre-Real ID case law as well. The major change under the Real ID Act to 8 U.S.C. 1229A C4C is basically that there can be times when an inconsistency does not need to reach the heart of the claim. While acknowledging that there still have to be specific and cogent reasons for a negative credibility finding. The court is to consider the totality of the circumstances. The agency is. But in that totality of the circumstances, there's a phrase about inconsistencies between written and oral statements or conflicting statements. And that is the precise thing that was not followed here. Considering the circumstances under which the statements were made. At no time did the immigration judge properly consider the circumstances under which any real or perceived inconsistencies were done. There were five issues that the immigration judge and without real explanation by the BIA, but the immigration judge identified five issues. One was a completely minor inconsistency. So minor is to be significant about whether she started living with her abuser either three years or five years before the abuse began. Had nothing to do with the abuse case. And then the other four are really just apparent inconsistencies which are easily explained. So you're on there. The 8th Circuit in Tian versus Barr. That's a 2019 case. Points out that every, especially when there's an interpreter. Even something as simple as interpretation has to be given some consideration by the trier of fact. Well, here we had interpretation. Nothing about that was ever mentioned. But still more. There were several things that the immigration judge failed to discuss. The only passing comment the IJ made about circumstances was that she had a miscarriage. She understands that a miscarriage can be traumatic. But she had three miscarriages. They were the result of physical and sexual abuse over an extended period of time. She had a 6th grade education.  She was a victim of rape. There were efforts prior to trial to update the evidence to make sure that she was putting forth the facts in question. So there were several things that came up before trial. It wasn't like she started spewing facts at trial that didn't exist. So she was pro se initially at the border. She was found to have credible fear. The first issue, the only real inconsistency, was when she met this Mikey Castro, Mr. Castro, who ended up being her abuser. She tied it to 2006 at the border. But in testimony, so in her first at the border, she said that she was pro se through a translator. Then in her initial statement, which was so poorly translated that the department had to come up with its own translation. She mentions 2006. That was prepared by and so was her initial asylum where the other place it was. These are the three places where she said 2006. This lawyer was suspended in three separate jurisdictions for, you know, for failing to adequately assist immigration clients. The IJ even found this asylum application timely because this immigration lawyer essentially abandoned the case and failed to file it on time. So none of that was taken into account when he's considering the 2006 testimony. She hired another attorney who did a better job and she submitted a corrected statement prior to trial. It clearly stated she met him in 2004. It was tied to when she was pregnant with her first child. The record bears that out in page 118 and 213 of the administrative record. You see that she testifies for that. And it really doesn't matter because the abuse occurred. Serious physical abuse in this case occurred from 2009 to 2013. So it really doesn't matter if they met in 2004 and 2006. And though it doesn't go to the heart of the claim is that technically it can be considered, there have to be specific and cogent reasons. Something that minor cannot be specific and cogent. I think that's more in line with Tories versus Mukasey and a 7th Circuit case from 2008. That's in our brief. So the judge took some some apparent inconsistencies and tried to extrapolate on them about living with this person who explained that he had business dealings outside of the house. He would be in the out of the house for a long period of time. She testified consistently with that. Some of these things were more specific evidence that was gained on cross-examination, which is perfectly understandable when you're considering a trial situation. Kaba versus Mukasey, 6th Circuit case from 2018, says the whole point of an individual hearing is to develop facts that before were summary and conclusive and to flesh them out. The whole thing about being threatened with a weapon, she acknowledged that on previous occasions. She didn't list each and every time that he had a gun around her or discharged a gun, but she mentioned that he threatened her. He also said that she didn't mention that he was affiliated with a gang. Well, the gang issue only came up at trial to be sure. And in the amended statement before that, however, she didn't mention that he had influence with the police, that they were his friends, that they wouldn't do anything to help her because he gave them lots of money. Later, he talked about his drug and alcohol use. It's all in there. And I just want to point out, because my time on argument is so limited, that it isn't merely a question of, well, the evidence could provide one explanation or the other, which I know the 8th Circuit has ruled on. This is that rare case like Tian where you must overturn the credibility. It's absolutely without foundation. The biggest mistake was in the, he cites his biggest reason, was the 2004 versus 2006, which is insignificant. The other one is corroboration with the record of miscarriage. The immigration judge mischaracterizes, no doubt, did no fault of his own. He just made a mistake. It's flat wrong when he says that she miscarried of six months and she testified eight. The record at page 439 clearly shows that it was eight. It was in the sixth month of that year, but it was not her sixth month of pregnancy. And for all of this, the judge was viewing this case through a lens, which he failed to take into account the totality of circumstances. Do you know what was not said about the totality of circumstances and the circumstances under which statements were made? He never mentioned her level of education. Never mentioned that her case was under an interpretation and translation. Never mentioned that she was a victim of analyzing this question of three times miscarried due to physical and sexual trauma. The efforts that she made prior to trial to have better counsel, the fact that her counsel abandoned her case, was suspended under three separate jurisdictions. It's all there in the record that she was nervous of the credible fearing at the border, of course, under all these circumstances. He even mentions the lawyer when he allows the case to be filed as timely, but doesn't mention it in analyzing these perceived inconsistencies. Mr. Wigner, would you like to retain any time for rebuttal? I would, Your Honor. I would absolutely. Thank you very much. All right. Mr. Engler? May it please the court, Michael Engler on behalf of the Attorney General of the United States. The record simply does not support opposing counsel's assertions. In this case, the immigration judge's adverse credibility determination is supported by specific and cogent reasons. And Petitioner hasn't pointed to anything that compels a contrary conclusion. For example, the discrepancy between 2004 and 2006 when she met her partner. It's significant. First off, it doesn't have to go to the heart of the matter. That's been made clear by Congress and the statute that's been made by this court repeatedly. It doesn't have to go to the heart of the matter, but it actually does. It's very significant when her entire claim, the basis of her entire claim is her relationship with her former partner. So things such as when she met him, her living situation with him, frequency of abuse and threats, all of that is very significant to her claim. So when on three separate occasions Petitioner stated that she met him in 2006, both in a credible fear interview with an asylum officer, before she even had the alleged ineffective assistance of counsel, she was pro se. She says, I met him in 2006. In her handwritten sworn statement, she wrote it herself. She acknowledges her handwriting. She wrote 2006. And then in her asylum application, she writes 2006. That's not a one-off, oh, it slipped. I said 2006. I meant 2004. That's repeated on separate occasions to separate people, Petitioner stating that she met him in 2006 and then testified that it was late 2003, early 2004. Regarding the interpreter and using translation, first off, I'm not sure that that was entirely briefed in Petitioner's opening brief. But nevertheless, most of these, if not all of these immigration cases have some sort of interpreter or translation that doesn't negate repeated inconsistencies and omissions and contradictions. And also regarding the alleged ineffectiveness of former counsel, first off, once again, that Petitioner hasn't raised the claim of ineffective assistance of counsel, hasn't filed the claim, hasn't moved to reopen proceedings based on that. And the claim really doesn't add up when you look at all of the inconsistencies that have nothing to do with former counsel. Like the one that I just mentioned with the interview, the credible peer interview where she said 2006, but then in testimony says 2004. That's an instance that has nothing to do with former counsel. Another instance is their living arrangement. In Petitioner's second sworn statement, after she already had new counsel, she specifically says that in 2004, she decided to live with her former partner. They moved in together and she said they started living as a living couple. That seems very straightforward. They started living together. And then during her testimony, she says, we never lived together. And she's very clear. We never lived together. He would visit me once or twice a month, but we absolutely never lived with me is her quote. I think she says it multiple times. And so these inconsistencies and discrepancies, first of all, once again, they do go to the heart of the matter, even though they don't have to, because they deal with how often she saw her abuser. But second off, they have nothing to do with her former counsel because her former counsel wasn't even involved when these separate statements were made. Even if we look at the two cases that Petitioner themselves said are most apposite in this case, the Garcia and Tebiasa case, even if we just look at those, both of those support the government's position. In both of those cases, this court found, this court upheld the agency's adverse credibility determination and denied the petitions for review. So even looking at Petitioner's cases, so what we see here is several inconsistencies and omissions. We see a lack of corroboration with the medical records, with her mother's affidavit that omits two of the three miscarriages. She doesn't mention them, even though Petitioner was very specific that she told her mother about it. She doesn't talk about her mother being threatened. Her mother never mentioned she was threatened with a gun by the former partner, even though Petitioner testified to that on appeal. What we have here is simply a lack of credibility, and that's what the immigration judge found, and the record doesn't compel a contrary conclusion. If there are no further questions, the government asks that the court affirm the agency's decision. All right. I don't see any questions from my colleagues. That being the case, Mr. Wickmer, your rebuttal. Thank you, Your Honor. No reason to overturn two big ones. The mother's affidavit completely corroborates her, corroborates abuse, it corroborates the miscarriage that's at issue. That's in 424. She's not referring to anything else about when they met or anything because that wasn't the intent of her letter. She was there to corroborate the evidence of that miscarriage. 439 in the administrative record is a smoking gun. You must overturn. The immigration judge got it flat wrong and used a factual matter against her in order to find negative credibility when he was wrong on the facts himself. Her testimony was correct and consistent. None of the other stuff is significant because it doesn't come anywhere near the heart of the case. The case is the abuse of her and what she suffered, not when they met, whether it was three or five years before the abuse began. Living together with someone who travels on business, which is what she said. And then on cross-examination, when she's asked whether they lived together, like she could easily misunderstand this, be together like full-time, like he didn't travel. It's an easily understood thing if we don't have this over-reliance upon the minor inconsistency and the factual mistake. This is not an ineffective assistance of counsel claim. That's mischaracterization. This is a fact about totality of the circumstances and the factors under which the statements were made. It was a fact known to the judge. He mentions it in his decision. The judge mentions that the lawyer was a lousy lawyer and that he abandoned the case. So he knew about it. This is an ineffective assistance of counsel. There's a reason why you've got this confusion. And he has to analyze this credibility decision according to the law. The Eighth Circuit has overturned, even though it doesn't do it often. This is a case where it has to happen. Thank you very much. Thank you, Mr. Wigmer. Thank you also, Mr. Engler. Court appreciates both counsel's presentations to us this morning, and we'll take the case under advisement.